**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF NORTH CAROLINA**

| | | |
|---|---|---|
| CHERYL NEBLETT, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:21CV267 |
| | ) | |
| KILOLO KIJAKAZI, | ) | |
| Acting Commissioner of Social | ) | |
| Security, | ) | |
| | ) | |
| Defendant.[1] | ) | |

### MEMORANDUM OPINION AND RECOMMENDATION
### OF UNITED STATES MAGISTRATE JUDGE

Plaintiff, Cheryl Neblett, brought this action pursuant to the Social Security Act (the "Act") to obtain judicial review of a final decision of Defendant, the Acting Commissioner of Social Security, denying Plaintiff's claims for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). (Docket Entry 1.) Defendant has filed the certified administrative record (Docket Entry 8 (cited herein as "Tr. __")), and both parties have moved for judgment (Docket Entries 11, 13; see also Docket Entry 12 (Plaintiff's Memorandum); Docket Entry 14 (Defendant's Memorandum)). For the reasons that follow, the Court should enter judgment for Defendant.

---

[1] President Joseph R. Biden, Jr., appointed Kilolo Kijakazi as the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi should be substituted for Andrew M. Saul as the Defendant in this suit. Neither the Court nor the parties need take any further action to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

# I. PROCEDURAL HISTORY

Plaintiff applied for DIB and SSI (Tr. 165-67, 266-77), alleging a disability onset date of February 7, 2018 (see Tr. 165, 266, 271). Upon denial of those applications initially (Tr. 117-38, 172-91) and on reconsideration (Tr. 139-64, 192-97, 424-36), Plaintiff requested a hearing de novo before an Administrative Law Judge ("ALJ") (Tr. 199-201). Plaintiff, her attorney, and a vocational expert ("VE") attended the hearing. (Tr. 78-116.) The ALJ subsequently ruled that Plaintiff did not qualify as disabled under the Act. (Tr. 49-59.) The Appeals Council thereafter denied Plaintiff's request for review (Tr. 37-42, 262-63), thereby making the ALJ's ruling the Commissioner's final decision for purposes of judicial review.

In rendering that disability determination, the ALJ made the following findings later adopted by the Commissioner:

1. [Plaintiff] meets the insured status requirements of the [] Act through June 30, 2022.

2. [Plaintiff] has not engaged in substantial gainful activity since February 7, 2018, the alleged onset date.

3. [Plaintiff] has the following severe impairments: degenerative disc disease of the lumbar spine and obesity.

. . .

4. [Plaintiff] does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

. . .

2

5.  . . . [Plaintiff] has the residual functional capacity to perform light work . . . except she can never climb ladders, ropes, or scaffolds; and can climb stairs and ramps, stoop, kneel, crouch, and crawl occasionally. She can push and[/]or pull consistent with the weights associated with light work.

. . .

6.  [Plaintiff] is capable of performing past relevant work as a storage facility clerk and customer service representative.  This work does not require the performance of work-related activities precluded by [her] residual functional capacity.

. . .

7.  [Plaintiff] has not been under a disability, as defined in the [] Act, from February 7, 2018, through the date of this decision.

(Tr. 55-59 (bold font and internal parenthetical citations omitted).)

## II.  DISCUSSION

Federal law "authorizes judicial review of the Social Security Commissioner's denial of social security benefits."  Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006).  However, "the scope of [the Court's] review of [such a] decision . . . is extremely limited."  Frady v. Harris, 646 F.2d 143, 144 (4th Cir. 1981). Plaintiff has not established entitlement to relief under the extremely limited review standard.

## A.  Standard of Review

"[C]ourts are not to try [a Social Security] case de novo." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974).  Instead, the Court "must uphold the factual findings of the ALJ if they are

3

supported by substantial evidence and were reached through application of the correct legal standard." Hines, 453 F.3d at 561 (internal brackets and quotation marks omitted). "Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (brackets and internal quotation marks omitted). "If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence." Hunter, 993 F.2d at 34 (internal quotation marks omitted).

"In reviewing for substantial evidence, the [C]ourt should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [ALJ, as adopted by the Commissioner]." Mastro, 270 F.3d at 176 (internal brackets and quotation marks omitted). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Commissioner] (or the ALJ)." Id. at 179 (internal quotation marks omitted). "The issue before [the Court], therefore, is not whether [the claimant] is disabled, but whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and

4

was reached based upon a correct application of the relevant law." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996).

When confronting that issue, the Court must take note that "[a] claimant for disability benefits bears the burden of proving a disability," Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981), and that, in this context, "disability" means the "'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months,'" id. (quoting 42 U.S.C. § 423(d)(1)(A)).[2]  "To regularize the adjudicative process, the Social Security Administration [('SSA')] has . . . detailed regulations incorporating longstanding medical-vocational evaluation policies that take into account a claimant's age, education, and work experience in addition to [the claimant's] medical condition."  Id.  "These regulations establish a 'sequential evaluation process' to determine whether a claimant is disabled."  Id.

This sequential evaluation process ("SEP") has up to five steps:  "The claimant (1) must not be engaged in 'substantial gainful activity,' i.e., currently working; and (2) must have a

_____

[2]  The Act "comprises two disability benefits programs.  [DIB] provides benefits to disabled persons who have contributed to the program while employed.  [SSI] provides benefits to indigent disabled persons.  The statutory definitions and the regulations . . . for determining disability governing these two programs are, in all aspects relevant here, substantively identical."  Craig, 76 F.3d at 589 n.1 (internal citations omitted).

5

'severe' impairment that (3) meets or exceeds the 'listings' of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity to (4) perform [the claimant's] past work or (5) any other work." Albright v. Commissioner of the Soc. Sec. Admin., 174 F.3d 473, 475 n.2 (4th Cir. 1999).[3] A finding adverse to the claimant at any of several points in the SEP forecloses an award and ends the inquiry. For example, "[t]he first step determines whether the claimant is engaged in 'substantial gainful activity.' If the claimant is working, benefits are denied. The second step determines if the claimant is 'severely' disabled. If not, benefits are denied." Bennett v. Sullivan, 917 F.2d 157, 159 (4th Cir. 1990).

On the other hand, if a claimant carries his or her burden at each of the first three steps, "the claimant is disabled." Mastro, 270 F.3d at 177. Alternatively, if a claimant clears steps one and two, but falters at step three, i.e., "[i]f a claimant's impairment is not sufficiently severe to equal or exceed a listed impairment, the ALJ must assess the claimant's residual functional capacity ('RFC')." Id. at 179.[4] Step four then requires the ALJ to assess

---

[3] "Through the fourth step, the burden of production and proof is on the claimant. If the claimant reaches step five, the burden shifts to the [Commissioner] . . . ." Hunter, 993 F.2d at 35 (internal citations omitted).

[4] "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations." Hines, 453 F.3d at 562 (noting that administrative regulations require RFC to reflect claimant's "ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis . . . [which] means 8 hours a day, for 5 days a week, or an equivalent work schedule" (internal emphasis and quotation marks omitted)). The RFC includes both a
(continued...)

6

whether, based on that RFC, the claimant can perform past relevant work; if so, the claimant does not qualify as disabled. <u>See</u> <u>id.</u> at 179-80. However, if the claimant establishes an inability to return to prior work, the analysis proceeds to the fifth step, whereupon the ALJ must decide "whether the claimant is able to perform other work considering both [the claimant's RFC] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job." <u>Hall</u>, 658 F.2d at 264-65. If, at this step, the Commissioner cannot carry its "evidentiary burden of proving that [the claimant] remains able to work other jobs available in the community," the claimant qualifies as disabled. <u>Hines</u>, 453 F.3d at 567.[5]

## B.  Assignments of Error

Plaintiff asserts that the Court should overturn the ALJ's finding of no disability on these grounds:

---

[4] (...continued)
"physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)." <u>Hall</u>, 658 F.2d at 265. "RFC is to be determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (<i>e.g.</i>, pain)." <u>Hines</u>, 453 F.3d at 562-63.

[5] A claimant thus can establish disability via two paths through the SEP. The first path requires resolution of the questions at steps one, two, and three in the claimant's favor, whereas, on the second path, the claimant must prevail at steps one, two, four, and five. Some short-hand judicial characterizations of the SEP appear to gloss over the fact that an adverse finding against a claimant on step three does not terminate the analysis. <u>See, e.g.,</u> <u>Hunter</u>, 993 F.2d at 35 ("If the ALJ finds that a claimant has not satisfied any step of the process, review does not proceed to the next step.").

7

1) "the ALJ's [RFC] assessment is unsupported by substantial evidence and frustrates meaningful review" (Docket Entry 12 at 5 (bold font and single-spacing omitted)); and

2) "[t]he ALJ erred by discrediting [Plaintiff]'s symptoms pursuant to an incorrect legal standard and improperly increased her burden of proof" (<u>id.</u> at 13 (bold font and single-spacing omitted)).

Defendant contends otherwise and seeks affirmance of the ALJ's decision. (Docket Entry 14 at 5-15.)

## 1. RFC

Plaintiff's first issue on review maintains that "the ALJ's [RFC] assessment is unsupported by substantial evidence and frustrates meaningful review." (Docket Entry 12 at 5 (bold font and single-spacing omitted).) In particular, Plaintiff argues that the ALJ 1) "erred [under <u>Dowling v. Commissioner of Soc. Sec. Admin.,</u> 986 F.3d 377, 387-88 (4th Cir. 2021)] by assessing [Plaintiff]'s RFC pursuant to an incorrect framework and without explaining the related findings in the manner required by Social Security Regulations" (Docket Entry 12 at 6 (bold font and single-spacing omitted)), 2) "failed to adequately explain his evaluation of the medical opinions" (<u>id.</u> at 8 (bold font and single-spacing omitted)), and 3) "erred by expressing [Plaintiff]'s RFC first and only then concluding that the limitations caused by her impairments were consistent with that RFC" and "failed to assess [Plaintiff]'s

8

capacity to perform relevant functions, despite contradictory evidence in the record," both in violation of <u>Monroe v. Colvin</u>, 826 F.3d 176 (4th Cir. 2016) (Docket Entry 12 at 10 (bold font and single-spacing omitted)).  For the reasons explained more fully below, none of those challenges carries the day.

a.  <u>Error under Dowling</u>

Plaintiff first asserts that "[t]he ALJ erred [under <u>Dowling</u>] by assessing [Plaintiff]'s RFC pursuant to an incorrect framework and without explaining the related findings in the manner required by Social Security Regulations."  (Docket Entry 12 at 6 (bold font and single-spacing omitted).)  According to Plaintiff, the <u>Dowling</u> court "held[ that] 'the ALJ relied on an incorrect regulatory framework when he assessed [the claimant]'s RFC,'" because he neither "'cite[d] to 20 C.F.R. § 416.945'" nor "'to [Social Security Ruling 96-8p, <u>Policy Interpretation Ruling Titles II and XVI: Assessing Residual Functional Capacity in Initial Claims</u>, 1996 WL 374184 (July 2, 1996) ("SSR 96-8p"),] and the 'ALJ's RFC determination was based entirely on [Social Security Ruling 96-7p, <u>Policy Interpretation Ruling Titles II and XVI: Evaluation of Symptoms in Disability Claims: Assessing the Credibility of an Individual's Statements</u>, 1996 WL 374186 (July 2, 1996) ("SSR 96-7p")] and [Social Security Ruling 16-3p, <u>Evaluation of Symptoms in Disability Claims</u>, 2017 WL 5180304 (Oct. 25, 2017) ("SSR 16-3p")],'" which rulings "'set out the process ALJs use to evaluate

9

capacity to perform relevant functions, despite contradictory evidence in the record," both in violation of <u>Monroe v. Colvin</u>, 826 F.3d 176 (4th Cir. 2016) (Docket Entry 12 at 10 (bold font and single-spacing omitted)).  For the reasons explained more fully below, none of those challenges carries the day.

a.  <u>Error under Dowling</u>

Plaintiff first asserts that "[t]he ALJ erred [under <u>Dowling</u>] by assessing [Plaintiff]'s RFC pursuant to an incorrect framework and without explaining the related findings in the manner required by Social Security Regulations."  (Docket Entry 12 at 6 (bold font and single-spacing omitted).)  According to Plaintiff, the <u>Dowling</u> court "held[ that] 'the ALJ relied on an incorrect regulatory framework when he assessed [the claimant]'s RFC,'" because he neither "'cite[d] to 20 C.F.R. § 416.945'" nor "'to [Social Security Ruling 96-8p, <u>Policy Interpretation Ruling Titles II and XVI: Assessing Residual Functional Capacity in Initial Claims</u>, 1996 WL 374184 (July 2, 1996) ("SSR 96-8p"),] and the 'ALJ's RFC determination was based entirely on [Social Security Ruling 96-7p, <u>Policy Interpretation Ruling Titles II and XVI: Evaluation of Symptoms in Disability Claims: Assessing the Credibility of an Individual's Statements</u>, 1996 WL 374186 (July 2, 1996) ("SSR 96-7p")] and [Social Security Ruling 16-3p, <u>Evaluation of Symptoms in Disability Claims</u>, 2017 WL 5180304 (Oct. 25, 2017) ("SSR 16-3p")],'" which rulings "'set out the process ALJs use to evaluate

9

the intensity and persistence of [a claimant's] symptoms.'" (Docket Entry 12 at 6 (quoting Dowling, 986 F.3d at 387) (internal quotation marks omitted).) Plaintiff notes that the court in Dowling found that, because "'an RFC assessment is a separate and distinct inquiry from a symptom evaluation, [] the ALJ erred treating them as one and the same.'" (Id. at 7 (quoting Dowling, 986 F.3d at 387).) Plaintiff maintains that, "just like the ALJ in *Dowling*, the ALJ in this case also based her [sic] RFC determination on SSR 16-3p and failed to cite to 20 C.F.R. § 416.945 or SSR 96-8p." (Id. (citing Tr. 57).) For the reasons explained below, Plaintiff's arguments fail as a matter of law.

Contrary to Plaintiff's arguments, the ALJ here did cite to the correct standards governing the assessment of RFC. Although Plaintiff focuses on one page of the ALJ's decision to assert that the ALJ failed to cite the proper standards (see id. at 7 (citing Tr. 57)), Plaintiff ignores the following recitation by the ALJ of the appropriate standards:

> Before considering step four of the [SEP], the [ALJ] must first determine [Plaintiff]'s [RFC] (20 CFR 404.1520(e) and 416.920(e)). An individual's [RFC] is her ability to do physical and mental work activities on a sustained basis despite limitations from her impairments. In making this finding, the [ALJ] must consider all of [Plaintiff]'s impairments, including impairments that are not severe (20 CFR 404.1520(e), 404.1545, 416.920(e), and 416.945; SSR 96-8p).

(Tr. 54 (emphasis added).) Moreover, "the ALJ went beyond his findings relating to Plaintiff's subjective complaints . . . [and]

10

specifically relied on the findings of the [s]tate agency consultants in assessing Plaintiff's RFC," Key v. Kijakazi, No. 1:20CV552, 2021 WL 3887616, at *7 (M.D.N.C. Aug. 31, 2021) (Peake, M.J.), recommendation adopted, slip op. (M.D.N.C. Sept. 24, 2021) (Osteen, J.).

Simply put, the ALJ did not err under Dowling.

b.    Evaluation of Opinion Evidence

Plaintiff next faults the ALJ for failing to provide a "logical explanation" for finding "'the opinion by [the initial-level state agency medical consultant ] not consistent with the evidence as a whole and [the reconsideration-level state agency medical consultant]'s conclusions [] persuasive'" (Docket Entry 12 at 9 (quoting Tr. 58)), noting that "[t]he Fourth Circuit has repeatedly held that an ALJ's conclusions must be adequately explained and [that] decisions lacking logical explanations frustrate meaningful review" (id. (citing Thomas v. Berryhill, 916 F.3d 307, 311 (4th Cir. 2019), Patterson v. Commissioner of Soc. Sec. Admin., 846 F.3d 656, 663 (4th Cir. 2017), and Mascio v. Colvin, 780 F.3d 632, 637-40 (4th Cir. 2015))).    In addition, Plaintiff posits that "[t]he ALJ's failure to explain how he considered the medical opinions [of consultative medical examiner Dr. Stephen Burgess] in evaluating [Plaintiff]'s RFC frustrates meaningful review."    (Id. at 10 (citing Tr. 58, 420, 423).) Plaintiff's contentions ultimately fail to warrant relief.

11

For benefits applications filed on or after March 27, 2017 (such as Plaintiff's (see Tr. 165-67, 266-77)), the SSA has enacted substantial revisions to the regulations governing the evaluation of opinion evidence.  See Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844-01, 2017 WL 168819 (Jan. 18, 2017).  Under the new regulations, ALJs are no longer required to assign an evidentiary weight to medical opinions or to accord special deference to treating source opinions.  See 20 C.F.R. §§ 404.1520c(a), 416.920c(a) (providing that ALJs "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [a claimant's] medical sources").  Instead, an ALJ must determine and "articulate in [the] . . . decision how persuasive [he or she] find[s] all of the medical opinions and all of the prior administrative medical findings in [a claimant's] case record."  20 C.F.R. §§ 404.1520c(b), 416.920c(b) (emphasis added).  In evaluating the persuasiveness of an opinion or finding, the SSA deems supportability and consistency "the most important factors" and thus the ALJ must address those two factors in evaluating the persuasiveness of an opinion or a finding.  20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2).  The ALJ must address the three other persuasiveness factors — the nature and extent of the medical source's relationship with the claimant and area of specialization,

12

as well as the catch-all "other factors that tend to support or contradict" the opinion/finding, 20 C.F.R. §§ 404.1520c(c)(3)-(5), 416.920c(c)(3)-(5) — only when the ALJ finds two or more opinions or findings about the same issue "[e]qually persuasive" in terms of supportability and consistency, 20 C.F.R. §§ 404.1520c(b)(3), 416.920c(b)(3).

The state agency medical consultants each opined that Plaintiff remained capable of medium exertion work (lifting, carrying, pushing, and pulling 50 pounds occasionally and 25 pounds frequently, see 20 C.F.R. §§ 404.1567(c), 416.967(c)), with occasional climbing of ladders, ropes, and scaffolds, and frequent climbing of ramps and stairs, kneeling, crouching, and crawling. (See Tr. 122-23, 133, 145-46, 156-57.) The two consultants' opinions differed in that the initial-level consultant "expedited," i.e., bypassed, a finding about Plaintiff's ability to perform her past relevant work ("PRW") at step four of the SEP (Tr. 124, 135), and proceeded to find, at step five, that she could perform three inspecting jobs available in significant numbers in the national economy (see Tr. 125, 136), whereas the reconsideration-level consultant specifically found that Plaintiff retained the RFC to perform her PRW as a customer service representative (see Tr. 148, 159).

The ALJ here provided the following analysis of the state agency medical consultants' opinions:

13

> The [ALJ] has fully considered the medical opinions and prior administrative medical findings as follows: [the initial-level state agency medical consultant] examined the records at the initial level and concluded that [Plaintiff]'s impairments resulted in limiting her to medium exertion, with additional limitation to no more than occasionally climbing ladders, ropes, and scaffolds; frequently climbing stairs or ramps, kneeling, crouching, and crawling. [The reconsideration-level state agency medical consultant] examined [Plaintiff]'s records at the reconsideration level and concluded that [she] could return to her past relevant work as a customer service representative. <u>The [ALJ] finds that the opinion by [the initial-level consultant] is not consistent with the evidence as a whole and [the reconsideration-level consultant]'s conclusions are persuasive</u>.

(Tr. 58 (emphasis added) (internal parenthetical citations omitted).) Contrary to Plaintiff's allegations (<u>see</u> Docket Entry 12 at 9), the Court can meaningfully review the ALJ's decisionmaking with regard to the consultants' opinions.

At first blush, the ALJ's decision to find <u>only</u> the reconsideration-level consultant's opinion persuasive would appear to conflict with the fact that both consultants proffered <u>identical</u>, medium-exertion RFCs (<u>compare</u> Tr. 122-23, 133, <u>with</u> Tr. 145-46, 156-57). Further comparison of the two consultants' opinions, however, elucidates the ALJ's reasoning. Although not well-worded, the ALJ clearly meant to indicate that he did not find <u>either</u> consultant's opinion that Plaintiff remained able to perform medium work persuasive, because that finding conflicted with the evidence as a whole. The ALJ's adoption of a light-exertion RFC supports that interpretation. (<u>See</u> Tr. 57.) The ALJ then specifically credited only the reconsideration-level consultant's

14

finding that Plaintiff could still perform her (lower exertion level) PRW as a customer service representative (<u>see</u> Tr. 58 (referencing Tr. 148, 159)), because, as discussed above, the initial level consultant "expedited," i.e., bypassed, the PRW finding and proceeded to find other jobs Plaintiff could perform at step five (<u>see</u> Tr. 125, 136). Moreover, although the ALJ did not detail the evidence that conflicted with the consultants' medium-exertion RFC opinions in the same paragraph in which the ALJ discussed their persuasiveness (<u>see</u> Tr. 58), the ALJ's earlier discussion of the medical evidence permits the Court to meaningfully review his evaluation, <u>see</u> <u>McCartney v. Apfel</u>, 28 F. App'x 277, 279-80 (4th Cir. 2002) (rejecting challenge to ALJ's finding for lack of sufficient detail where other discussion in decision adequately supported finding and stating "that the ALJ need only review medical evidence once in his decision"); <u>Kiernan v. Astrue</u>, No. 3:12CV459, 2013 WL 2323125, at *5 (E.D. Va. May 28, 2013) (unpublished) (observing that, where an "ALJ analyzes a claimant's medical evidence in one part of his decision, there is no requirement that he rehash that discussion" in other parts of his analysis). Earlier in the ALJ's decision, he discussed evidence, including Plaintiff's hearing testimony, that post-dated the consultants' opinions and supported greater restrictions in the RFC. (<u>See</u> Tr. 56-58.) Examples of that contrasting evidence include the following:

- although Plaintiff stated on "a Function Report dated October 15, 2018," that "she use[d] a can[e] <u>only</u> when her back and legs [we]re '<u>very painful</u>'" (Tr. 58 (emphasis added) (quoting Tr. 316)), she testified at the hearing that "[s]he began using a cane <u>when she walk[ed]</u> because the back pain radiate[d] into her legs and ma[de] them numb" (Tr. 57 (emphasis added) (referencing Tr. 85); <u>see also</u> Tr. 89 (reflecting Plaintiff's testimony that she used a cane even <u>when standing</u> because of right-sided weakness)); and

- "[l]umbar spine x-rays [dated November 6, 2017,] revealed "no acute abnormality or compression other than mild dextroconvex lumbar scoliosis and some degenerative changes" (Tr. 56 (citing Tr. 401)), but lumbar "x-rays taken April 27, 2020, [] revealed mild scoliosis, multilevel degenerative disc disease and facet arthropathy with some narrowing of the L4-5 and L5-S1 disc spaces" (Tr. 57 (referencing Tr. 452)).

The progression of Plaintiff's reported need to use a cane from only at times of heightened pain to at all times when on her feet and the radiographic evidence of interval worsening of her lumbar degenerative disc disease from November 2017 to April 2020 support the ALJ's decision not to credit the consultants' medium-exertion RFC (<u>see</u> Tr. 58) and, instead, to adopt a light-exertion RFC with greater postural restrictions (<u>compare</u> Tr. 57, <u>with</u> Tr. 122-23, 133, 145-46, 156-57).[6]

Plaintiff additionally contends that "[t]he ALJ's failure to explain how he considered [Dr. Burgess's] medical opinions in

---

[6] Although the ALJ did not include Plaintiff's reported need for a cane in the RFC (<u>see</u> Tr. 57), the VE testified that the need to use a cane at all times when on one's feet would not preclude Plaintiff from performing her PRW as a customer service representative (<u>see</u> Tr. 112-13). Notably, Plaintiff did not allege error arising out of the ALJ's omission of the need for a cane in the RFC. (<u>See</u> Docket Entry 12.)

evaluating [Plaintiff]'s RFC frustrates meaningful review." (Docket Entry 12 at 10 (citing Tr. 58, 420, 423).) Although the ALJ discussed Dr. Burgess's findings and opinions in a fair amount of detail in the context of the ALJ's analysis of whether Plaintiff's impairments met or equaled the requirements of any listings at step three of the SEP (see Tr. 56), the ALJ did not specifically make a finding as to the persuasiveness of those opinions (see Tr. 58). That omission violates the Commissioner's regulations governing the evaluation of opinion evidence, which require the ALJ to "articulate in [the] . . . decision how persuasive [he] find[s] all of the medical opinions . . . in [Plaintiff's] case record," 20 C.F.R. §§ 404.1520c(b), 416.920c(b) (emphasis added); however, for the reasons discussed below, that error by the ALJ remains harmless under the facts of this case, see generally Fisher v. Bowen, 869 F.2d 1055, 1057 (7th Cir. 1989) (observing that "[n]o principle of administrative law or common sense requires us to remand a case in quest of a perfect opinion unless there is reason to believe that the remand might lead to a different result").

Dr. Burgess conducted a consultative medical examination of Plaintiff on November 28, 2018 (see Tr. 419-23), and found "mild" tenderness in Plaintiff's cervical and lumbar spines (see Tr. 421-22 (emphasis added)), "some" tenderness over her sacroiliac joints (Tr. 422 (emphasis added)), decreased hip flexion (see id.),

17

reduced cervical flexion and extension (see Tr. 421), an "equivocal" supine straight leg test (Tr. 422 (emphasis added)), and crepitus in Plaintiff's knees, left greater than right (see Tr. 421), while also noting that Plaintiff could "not fully squat without assistance" (Tr. 422 (emphasis added)). On the other hand, Dr. Burgess recorded a normal gait without a handheld assistive device (see Tr. 420), normal heel and toe walk and tandem gait (see Tr. 422), no edema (see Tr. 421), no spasm or trigger points (see Tr. 421-22), full strength including Plaintiff's grip (see Tr. 422), a negative seated straight leg raise test (see id.), and normal sensation, coordination, and reflexes (see id.). As a result of those findings, Dr. Burgess opined that Plaintiff's "ability to perform work-related activities such as bending, stooping, lifting, walking, crawling, squatting, carrying, traveling, pushing and pulling heavy objects, as well as the ability to hear or speak, appear[ed] to be mildly and intermittently more moderately impaired." (Tr. 423 (emphasis added).)[7]

Plaintiff has not explained how the ALJ's light-exertion RFC with additional postural restrictions (see Tr. 57) conflicts with Dr. Burgess's mild-to-moderate limitations (see Docket Entry 12 at

---

[7] Dr. Burgess's report does not explain why he rated Plaintiff's abilities to hear and speak as "mildly and intermittently more moderately impaired" (Tr. 423), especially given the lack of findings regarding Plaintiff's speech (see Tr. 420-22) and Dr. Burgess's earlier finding that Plaintiff's "hearing appear[ed] to be adequate for normal conversation" (Tr. 420).

10).  Thus, remand for an express evaluation by the ALJ of the persuasiveness of Dr. Burgess's opinions would serve no purpose, as Plaintiff simply has not shown that the ALJ's <u>full adoption</u> of Dr. Burgess's opinions would have changed the RFC in any material way and/or resulted in a more favorable outcome in her claims.[8]

c.  <u>Error under Monroe</u>

Plaintiff's third and final complaint regarding the ALJ's RFC contends that he 1) "erred by expressing [Plaintiff]'s RFC first and only then concluding that the limitations caused by her impairments were consistent with that RFC," and 2) "failed to assess [Plaintiff]'s capacity to perform relevant functions, despite contradictory evidence in the record," both in violation of <u>Monroe</u>.  (Docket Entry 12 at 11 (citing <u>Monroe</u>, 826 F.3d at 188); <u>see also</u> <u>id.</u> at 11-12 (detailing evidence Plaintiff believes contradicts RFC (citing Tr. 85-87, 92, 94-95, 398, 401, 404, 408-09, 420, 423, 441-42, 452)).)  In Plaintiff's view, "[t]he ALJ failed to adequately explain how [Plaintiff] can perform the assigned RFC five days per week, eight hours per day despite her advanced age, severe physical impairments, symptoms, and need for

---

[8] Notably, Dr. Burgess did not place <u>any</u> limitations on Plaintiff's abilities to sit or stand.  (<u>See</u> Tr. 423.)  Moreover, although not argued by Plaintiff (<u>see</u> Docket Entry 12 at 10), even the ALJ's <u>full</u> adoption of Dr. Burgess's mild-to-moderate limitation on Plaintiff's ability to walk (<u>see</u> Tr. 423) would not change the outcome of her claims, as the ALJ found (based on the VE's testimony (<u>see</u> Tr. 110-11)) that Plaintiff remained capable of returning to her PRW as a customer service representative (<u>see</u> Tr. 59), which the VE placed at the <u>sedentary</u> range of exertion (<u>see</u> Tr. 110).

a cane." (Id. at 12 (citing Tr. 57-58).) Plaintiff's reliance on Monroe fails on both fronts.

To begin, as a matter of formatting and organizational structure, ALJs typically express the RFC as a numbered and bolded heading (as they do all of the findings they make at other steps of the SEP), and then discuss the evidence that supports that RFC finding. See Sherah F. v. Berryhill, No. CV 18-1957, 2019 WL 2642833, at *9 (D. Md. June 27, 2019) (unpublished) ("In th[e c]ourt's experience, ALJs will include their RFC findings in the heading of the section of their decision discussing a claimant's RFC. In the body of the discussion that follows, the ALJs will then discuss the evidentiary support and reasoning behind their conclusion. When they do refer to the RFC again in the discussion, it will usually be in general terms."). The ALJ's RFC finding here conformed to that organizational format. (See Tr. 57.) The Sherah F. court found "unclear" whether the ALJ's mere placement of the RFC in a heading preceding the supporting analysis constituted "'express[ing the] RFC first'" as prohibited by Monroe and its progeny. Id. (citing Thomas, 916 F.3d at 312, in turn citing Monroe, 826 F.3d at 188); see also Jordan v. Berryhill, No. 1:16CV951, 2017 WL 8776509, at *8 & n.4 (E.D. Va. Nov. 3, 2017) (unpublished) (assuming arguendo that ALJ's placement of RFC in heading constituted expressing RFC first under Monroe, but noting that "the RFC assessment is bolded and structured as a heading" and

20

that, "[a]fter providing the RFC assessment, the ALJ analyzes the medical evidence . . . [and] then states his findings and refers to his previously provided RFC assessment" and thus that "it appears that the ALJ expressing [the p]laintiff's RFC assessment first was merely an organizational feature of his decision" and that, "[o]therwise, the ALJ did provide an analysis and then come to a decision on [the p]laintiff's RFC" (internal parenthetical citations omitted)), recommendation adopted, 2018 WL 555716 (E.D. Va. Jan. 23, 2018) (unpublished).

However, the Court need not resolve that issue because, even assuming the ALJ here expressed the RFC before the supporting analysis, unlike in Monroe, the ALJ here did not then find the evidence "consistent" with that predetermined RFC. (See Tr. 57-58.) The Monroe decision expressly relied on the Fourth Circuit's earlier decision in Mascio, wherein the Fourth Circuit found erroneous an ALJ's reliance on the "boilerplate" language that "the claimant's statements concerning the intensity, persistence and limiting effects of his symptoms [we]re not credible to the extent they [we]re inconsistent with the above [RFC] assessment," holding that such language "gets things backwards by implying that" the ALJ first determined the RFC, and then used the RFC "to determine the claimant's credibility." Mascio, 780 F.3d at 639 (emphasis added). The ALJ here, however, did not use that forbidden language in assessing Plaintiff's subjective symptom reporting (see Tr. 58

21

(finding that Plaintiff's "statements concerning the intensity, persistence and limiting effects of [her] symptoms [we]re not entirely consistent with the medical evidence and other evidence in the record <u>for the reasons explained in th[e] decision</u>" (emphasis added))) and thus Plaintiff has not demonstrated error under <u>Monroe</u> in that regard, <u>see</u> <u>Linares v. Colvin</u>, No. 14-120, 2015 WL 4389533, at 86 (W.D.N.C. July 17, 2015) (unpublished) (finding language similar to phrasing used by ALJ here "distinguishable from the now suspect boilerplate language used in <u>Mascio</u>" because "the ALJ's language does not suggest that he first assessed [the p]laintiff's RFC and used that assessment to determine credibility").

Plaintiff's second <u>Monroe</u>-based contention, that the ALJ "failed to assess [Plaintiff]'s capacity to perform relevant functions, despite contradictory evidence in the record" (Docket Entry 12 at 11 (citing <u>Monroe</u>, 826 F.3d at 188)) similarly misses the mark. Although Plaintiff detailed evidence she believed contradicted the RFC (<u>see</u> <u>id.</u> at 11-12 (citing Tr. 85-87, 92, 94-95, 398, 401, 404, 408-09, 420, 423, 441-42, 452)), she neither identified <u>any</u> "relevant functions" the ALJ failed to consider, nor explained how remand for further consideration of such functions would result in a more favorable outcome in her claim (<u>see</u> <u>id.</u>). That failure precludes relief. <u>See</u> <u>United States v. Zannino</u>, 895 F.2d 1, 17 (1st Cir. 1990) ("[A] litigant has an obligation to spell out its arguments squarely and distinctly, or else forever

22

hold its peace." (internal quotation marks omitted)); Hughes v. B/E Aerospace, Inc., No. 1:12CV717, 2014 WL 906220, at *1 n.1 (M.D.N.C. Mar. 7, 2014) (unpublished) (Schroeder, J.) ("A party should not expect a court to do the work that it elected not to do.").

In light of the foregoing analysis, Plaintiff's first assignment of error falls short.

## 2. Evaluation of Subjective Symptoms

In Plaintiff's second and final assignment of error, she asserts that "[t]he ALJ erred by discrediting [Plaintiff]'s symptoms pursuant to an incorrect legal standard and improperly increased her burden of proof." (Docket Entry 12 at 13 (bold font and single-spacing omitted).) More specifically, Plaintiff contends that "the regulations and Fourth Circuit precedent[ preclude] an ALJ [from] reject[ing] statements about the intensity and persistence of pain or other symptoms due to a lack of objective evidence." (Id. (citing 20 C.F.R. §§ 404.1529(c)(2), 416.929(c)(2), Arakas v. Commissioner of Soc. Sec. Admin., 983 F.3d 83, 97-98 (4th Cir. 2020), Lewis v. Berryhill, 858 F.3d 858, 866 (4th Cir. 2017), Hines, 453 F.3d at 565, Craig, 76 F.3d at 592-93, and Walker v. Bowen, 889 F.2d 47, 49 (4th Cir. 1989)).) According to Plaintiff, "the ALJ evaluated [Plaintiff]'s symptoms based on an incorrect legal standard by requiring objective evidence in support." (Id. at 14 (citing Tr. 58).) Plaintiff further notes that, "other than the ALJ's unfounded assertion that [Plaintiff]

23

should be able to afford prescription medication and treatment without health insurance because she smokes cigarettes, the ALJ failed to explain what statements by [Plaintiff] undercut her subjective complaints." (Id. at 15 (citing Tr. 58).) Those contentions do not warrant relief.

As an initial matter, Plaintiff overstates the reach of the Fourth Circuit cases upon which she relies by stating that such "precedent[ precludes] an ALJ [from] reject[ing] statements about the intensity and persistence of pain or other symptoms due to a lack of objective evidence." (Id. at 13 (citing Arakas, 983 F.3d at 97-98, Lewis, 858 F.3d at 866, Hines, 453 F.3d at 565, Craig, 76 F.3d at 592-93, and Walker, 889 F.2d at 49).) Although Arakas "reiterate[d] the long-standing law in [the Fourth C]ircuit that disability claimants are entitled to rely exclusively on subjective evidence to prove the severity, persistence, and limiting effects of their symptoms," Arakas, 983 F.3d at 98, long-standing cases containing the substance of that holding, such as Craig and Hines (among others), clarify that, "[a]lthough a claimant's allegations about her [symptoms] may not be discredited solely because they are not substantiated by objective evidence of the [symptoms themselves] or [their] severity, they need not be accepted to the extent they are inconsistent with the available evidence, including objective evidence of the underlying impairment, and the extent to which that impairment can reasonably be expected to cause the

24

[symptoms] the claimant alleges she suffers," <u>Craig</u>, 76 F.3d at 595 (emphasis added); <u>see also</u> <u>Hines</u>, 453 F.3d at 565 n.3 (quoting <u>Craig</u>, 76 F.3d at 595).  In other words, under the appropriate circumstances, an ALJ <u>may</u> choose to rely exclusively on a claimant's subjective symptom reports to find disabling symptoms; however, <u>Arakas</u> does not <u>compel</u> ALJs to consider <u>only</u> subjective evidence, as such a requirement would conflict with the Act itself and its regulations, both of which plainly require ALJs to consider a variety of factors, including objective medical evidence, in evaluating the intensity, persistence, and limiting effects of symptoms.  <u>See</u> 42 U.S.C. § 423(d)(5)(A) ("Objective medical evidence of pain . . . established by medically acceptable clinical or laboratory techniques (for example, deteriorating nerve or muscle tissue) <u>must</u> be considered in reaching a conclusion as to whether [an] individual is under a disability." (emphasis added)); <u>see also</u> 20 C.F.R. §§ 404.1529(c)(2), 416.929(c)(2) ("Objective medical evidence . . . such as . . . reduced joint motion, muscle spasm, sensory deficit or motor disruption . . . is a <u>useful</u> <u>indicator</u> to assist [the ALJ] in making reasonable conclusions about the intensity and persistence of [a claimant's] symptoms and the effect those symptoms, such as pain, may have on [his or her] ability to work.  [An ALJ] <u>must always</u> attempt to obtain objective medical evidence and, when it is obtained, [the ALJ] <u>will consider</u>

25

it in reaching a conclusion as to whether [a claimant is] disabled." (emphasis added)).

Here, in compliance with the regulations and Fourth Circuit precedent discussed above, the ALJ considered the objective medical evidence as one part of his evaluation of the intensity, persistence, and limiting effects of Plaintiff's alleged symptoms. (See Tr. 58 (finding Plaintiff's "statements concerning the intensity, persistence and limiting effects of [her] symptoms [] not entirely consistent with the medical evidence and other evidence in the record" (emphasis added)).) As detailed in the discussion of Plaintiff's first issue on review, the ALJ additionally considered the opinion evidence of record (see Tr. 58), and reduced the state agency medical consultants' RFC assessments from the medium level of exertion to the light level and added additional postural restrictions (compare Tr. 57, with Tr. 122-23, 133, 145-46, 156-57). The ALJ also summarized Plaintiff's hearing testimony and statements on a Function Report in a fair amount of detail (see Tr. 57-58), while additionally discussing all five of the medical records that exist in the record (Tr. 56-57), and Plaintiff has not identified additional evidence or subjects of discussion pertaining to her subjective symptom reporting that the ALJ omitted from his analysis (see Docket Entry 12 at 12-15). The ALJ ended his discussion of the RFC by stating that the RFC "[wa]s supported by the evidence of record when

26

considered as a whole" (Tr. 59 (emphasis added)) and thus made clear that, in the final analysis, he considered the entire record, and not just the objective medical evidence, in determining Plaintiff's RFC.

The ALJ "also noted that, while [Plaintiff] contends she cannot afford treatment or medications, she does smoke cigarettes on a regular basis[ which ] indicates she has some discretionary funds that could be used to purchase medications." (Tr. 58.) Although Plaintiff characterized the ALJ's observation in that regard as "unfounded" (Docket Entry 12 at 15), she made no further effort to explain the impropriety of that observation (see id.). In fact, the record supports the ALJ's findings both that Plaintiff alleged an inability to afford treatment and medications (see Tr. 89, 97, 317), and that Plaintiff smoked cigarettes throughout the relevant period in this case (see Tr. 398 (2017 hospital record describing Plaintiff as "[c]urrent every day smoker"), 420 (Plaintiff's 2018 report to Dr. Burgess that she had smoked "less than a pack a day . . . for 43 years"), 439 & 442 (Plaintiff's 2019 statements to nurse practitioner that she smoked "5 or less" cigarettes on "some days, but not every day")).

Moreover, courts within the Fourth Circuit have long held that ALJs may permissibly consider a claimant's purchase of cigarettes when evaluating an alleged inability to afford treatment, as

27

exemplified by this decision from the United States District Court for the Eastern District of Virginia:

> The Fourth Circuit has held that "[a] claimant may not be penalized for failing to seek treatment [ ]he cannot afford," because "'[i]t flies in the face of the patent purposes of the . . . Act to deny benefits to someone . . . too poor to obtain medical treatment that may help him.'" Lovejoy v. Heckler, 790 F.2d 1114, 1117 (4th Cir. 1986) (quoting Gordon v. Schweiker, 725 F.2d 231, 237 (4th Cir. 1984)). However, "Lovejoy and its progeny do not in any way preclude the ALJ from considering inconsistencies in the record . . . ." Riegel v. Colvin, [No. 7:12CV526,] 2014 WL 462525, at *8 (W.D. Va. Feb. 5, 2014). In Riegel, the plaintiff testified that she did not seek treatment, because she did not have insurance, but she continued to smoke cigarettes against medical advice. Id. The court explained that the ALJ did not penalize the plaintiff for lacking insurance; rather, the ALJ penalized her "because of this inconsistency in the evidence." Id.

Woodson v. Berryhill, No. 3:17CV347, 2018 WL 4659449, at *18 (E.D. Va. Aug. 7, 2018) (unpublished), recommendation adopted, 2018 WL 4658681 (E.D. Va. Sept. 27, 2018) (unpublished); see also Arnold v. Berryhill, No. 3:18CV391, 2019 WL 2883815, at *7 (W.D.N.C. June 12, 2019) (unpublished) (holding that "ALJ did not err" by discounting the plaintiff's claim that he "failed to take his prescribed medication due to an alleged lack of funds," where "ALJ noted . . . that [the p]laintiff could afford two packs of cigarettes per day"), recommendation adopted sub nom. Arnold v. Saul, 2019 WL 2881548 (W.D.N.C. July 2, 2019) (unpublished); Rinaldi v. Berryhill, No. 2:16CV1403, 2017 WL 4003384, at *4 (D.S.C. Sept. 12, 2017) (unpublished) ("[I]t was not error for the ALJ to consider the effect of [the p]laintiff's cigarette habit on her ability to

afford treatment."); <u>Thompson v. Colvin</u>, No. 7:15CV26, 2016 WL 1069654, at *3 (E.D.N.C. Mar. 16, 2016) (unpublished) (finding no error in ALJ's consideration of the plaintiff's ongoing cigarette purchases despite claiming an inability to afford medication); <u>Hill v. Colvin</u>, No. 7:14CV171, 2015 WL 5147604, at *6 (E.D.N.C. Aug, 10, 2015) (unpublished) (noting that, "[a] claimant's use of income to purchase cigarettes can undercut h[er] allegations that [s]he is unable to afford treatment"), <u>recommendation adopted</u>, 2015 WL 5164957 (E.D.N.C. Sept. 2, 2015) (unpublished). Thus, Plaintiff simply has not demonstrated error with respect to the ALJ's consideration of Plaintiff's continued smoking in the face of her claimed inability to afford treatment and medications.

In short, Plaintiff's second and last issue on review does not demonstrate reversible error.

### III. CONCLUSION

Plaintiff has not established an error warranting remand.

**IT IS THEREFORE RECOMMENDED** that the Commissioner's decision finding no disability be affirmed, that Plaintiff's Motion for Judgment on the Pleadings (Docket Entry 11) be denied, that

Defendant's Motion for Judgment on the Pleadings (Docket Entry 13)

be granted, and that this action be dismissed with prejudice.

/s/ L. Patrick Auld
**L. Patrick Auld**
**United States Magistrate Judge**

April 25, 2022